1  Brooke A. M. Taylor, WSBA 33190 (Admitted *Pro Hac Vice*)
   btaylor@susmangodfrey.com
2  Jordan W. Connors, WSBA 41649 (Admitted *Pro Hac Vice*)
   jconnors@susmangodfrey.com
3  SUSMAN GODFREY L.L.P.
   1201 Third Avenue, Suite 3800
4  Seattle, WA 98101-3000
   Telephone: (206) 516-3880
5  Facsimile: (206) 516-3883
6
7  Stephen E. Morrissey, CA Bar 187865
   smorrissey@susmangodfrey.com
8  SUSMAN GODFREY L.L.P.
   1901 Avenue of the Stars, Suite 950
9  Los Angeles, CA 90067-6029
   Telephone: (310) 789-3103
10 Facsimile: (310) 789-3150
11
   *Plaintiff Vasudevan Software, Inc.*
12

13                **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
14                  **SAN FRANCISCO DIVISION**

15 VASUDEVAN SOFTWARE, INC.,              Case No. 3:11-06637-RS-PSG

16                 Plaintiff,             **PLAINTIFF VASUDEVAN SOFTWARE,**
                                          **INC.'S NOTICE OF MOTION AND**
17 vs.                                    **MOTION FOR SANCTIONS AGAINST**
                                          **MICROSTRATEGY**
18 MICROSTRATEGY INCORPORATED,

19                 Defendant.             Date: January 17, 2013
                                          Time: 1:30 pm
20                                        Location:  450 Golden Gate Avenue
                                          San Francisco, California
21

22

23

24

25

26

27

28

PLAINTIFF VSI'S MOTION FOR SANCTIONS -i

2490307v1/012934

# TABLE OF CONTENTS

I.    MicroStrategy Is Attempting to Win This Case, Not on the Merits, But By Threatening, Intimidating, and Extorting VSi, Susman Godfrey, and Susman Godfrey's Other Clients .................................................................................................. 3

    A.    MicroStrategy Threatened to Harm VSi and its Counsel if VSi Refused to Dismiss its Case ........................................................................................... 3

    B.    MicroStrategy Has Begun to Carry Out its Threats to Harm VSi and Susman Godfrey ........................................................................................... 5

    C.    MicroStrategy's Petition for *Inter Partes* Review of Zillow's Patent is Unrelated to MicroStrategy's Business and Is Clearly Intended to Harm Susman Godfrey and VSi ........................................................................... 6

II.   The Court Should Issue Sanctions Against MicroStrategy ................................. 9

III.  The Court Should Fashion an Appropriate Set of Sanctions Designed to Punish MicroStrategy and Deter Similar Bad Faith Conduct ....................................... 13

IV.   Conclusion ...................................................................................................... 16

1

2

<u>**TABLE OF AUTHORITIES**</u>

3

**Cases**

4

*Allergan Inc. v. Cayman Chem. Co.*,
  2009 WL 8591844 (C.D. Cal. Apr. 9, 2009) ............................................................... 7

5

*Ashker v. Rowland*,
  131 F.3d 145 (9th Cir. 1997) ................................................................................ 13

6

7

*B.K.B. v. Maui Police Dept.*,
  276 F.3d 1091 (9th Cir. 2002) .............................................................................. 10

8

*Cf. Kramer v. Tribe*,
  156 F.R.D. 96 (D.N.J. 1994) ................................................................................... 9

9

10

*Chambers v. NASCO, Inc.*,
  501 U.S. 32 (1991) ....................................................................................... 9, 14

11

*Cvgnus Telecomms. Tech., LLC v. United
  World Telecom, L.C.*,
  385 F. Supp. 2d 1022 (N.D. Cal. 2005) ..................................................................... 7

12

13

*Dubuc v. Green Oak Twp.*,
  2010 WL 3245324 (E.D. Mich. Aug. 16, 2010) ........................................................... 13

14

*Erickson v. Newmar Corp.*,
  87 F.3d 298 (9th Cir. 1996) ................................................................................. 13

15

16

*Fidelity Nat. Title Ins. Co. of New York v.
  Intercounty Nat. Title Ins. Co.*,
  2002 WL 1433717 (N.D. Ill. July 2, 2002) ......................................................... 10, 12

17

18

*Fink v. Gomez*,
  239 F.3d 989 (9th Cir. 2001) ................................................................................ 12

19

*Fresenius Med. Care Holdings, Inc. v. Baxter
  Int'l, Inc.*,
  2007 U.S. Dist. LEXIS 44107 (N.D.Cal.2007) ............................................................. 7

20

21

*Fuoco v. Wells*,
  2005 WL 2317750 (M. D. Fla. Jul. 25, 2005) ............................................................. 11

22

*Galanis v. Szulik*,
  841 F. Supp. 2d 456 (D. Mass. 2011) ....................................................................... 11

23

24

*Hall v. Cole*,
  412 U.S. 1 (1973) ............................................................................................ 10

25

*Kelly v. U.S. Bank*,
  2010 WL 2817292 (D. Or. June 25, 2010) ................................................................. 15

26

27

*Kopitar v. Nationwide Mut. Ins. Co.*,
  266 F.R.D. 493 (E.D. Cal. 2010) ............................................................................ 13

28

*Lone Ranger Television, Inc. v. Program
    Radio Corp.,*
    740 F.2d 718 (9th Cir. 1984)......................................................................................... 2

*Martin v. Automobili Lamborghini
    Exclusive, Inc.,*
    307 F.3d 1332 (11th Cir. 2002)..................................................................................... 12

*MicroStrategy v. Crystal Decisions,*
    555 F. Supp. 2d 475 (D. Del. 2008) ........................................................................... 8, 9

*Molski v. Mandarin Touch Restaurant,*
    347 F. Supp. 2d 860 (C.D. Cal. 2004) ..................................................................... 11, 15

*Oliveri v. Thompson,*
    803 F.2d 1265 (2d Cir. 1986)....................................................................................... 10

*Roadway Express, Inc. v. Piper,*
    447 U.S. 752 (1980) ..................................................................................................... 10

*Saint–Gobain Performance Plastics Corp. v.
    Advanced Flexible Composites, Inc.,*
    436 F. Supp. 2d 252 (D. Mass. 2006) ........................................................................... 8

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on January 17, 2013, at 1:30 p.m., or as soon thereafter as counsel may be heard by the above-titled Court, located at the United States Courthouse, 450 Golden Gate Avenue, San Francisco, California, plaintiff Vasudevan Software, Inc. ("VSi") shall move the Court for sanctions against defendant MicroStrategy Incorporated ("MicroStrategy") for its misconduct in attempting to intimidate VSi into dismissing its lawsuit, by threatening to harm and harming the interests of VSi and its counsel.

VSi, hereby, respectfully requests an order sanctioning MicroStrategy.

1

2

3

4

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

"*While zealous advocacy is laudable, it has its limits.*"

- *Lone Ranger Television, Inc. v. Program Radio Corp.*, 740 F.2d 718, 727 (9th Cir. 1984) (Wallace, J.)

5

6

7

8

9

10

11

12

MicroStrategy, a large corporation with revenues of more than half-a-billion dollars per year, is boldly and explicitly wielding its resources as a club to threaten and injure its adversary in this litigation, VSi, and the law firm representing its adversary, Susman Godfrey LLP ("Susman Godfrey"). MicroStrategy's General Counsel, Mr. Jonathan Klein, recently threatened VSi and promised "to take action" against Susman Godfrey unless VSi dismisses its lawsuit against MicroStrategy. In response, VSi declined, and just a few weeks later MicroStrategy began to deliver on its threats.

13

14

15

16

17

18

19

20

21

22

23

24

Assisted by Mr. Klein, MicroStrategy, a company that describes itself as "a global provider of enterprise software platforms for business intelligence," filed a petition with the United States Patent and Trademark Office ("USPTO") challenging a patent owned by one of Susman Godfrey's other clients Zillow, Inc. ("Zillow").[1] Zillow is a company that offers a real estate information marketplace, including a real estate website and mobile real estate applications, for real estate sellers, buyers, and renters. Zillow's patent—involving automatic valuation models of real estate—bears no relation to any of MicroStrategy's business pursuits. Yet MicroStrategy nonetheless expended tens of thousands of dollars to challenge Zillow's patent and potentially delay and obstruct Zillow's recently-filed lawsuit involving that patent, all to get back at Susman Godfrey for representing VSi against MicroStrategy.

25

26

In many cases where one party abuses its power and the legal system, it can prove challenging to decipher the offending party's malicious motive and intent; but not here. Here,

27

28

---

[1] Susman Godfrey files this motion on behalf of, and in the best interest of, Susman Godfrey's

PLAINTIFF VSI'S MOTION FOR SANCTIONS
AGAINST MICROSTRATEGY - 2

Mr. Klein explained MicroStrategy's motive and intent in plain terms when he threatened VSi, threatened Susman Godfrey, and tied those threats directly to MicroStrategy's demand that VSi dismiss its claims.

MicroStrategy's threats and actions constitute an assault on VSi, Zillow, and Susman Godfrey, but more broadly on the integrity of the judicial process. As a result of MicroStrategy's action, Zillow has been forced to retain counsel to defend its patent against the re-examination, the time and resources of the USPTO are at risk of being wasted to settle a grudge, and VSi and its counsel have been faced with the prospect of continued harassment and injury if they do not accede to MicroStrategy's demands.

MicroStrategy should be enjoined from further contravening the judicial process by attempting to intimidate and threaten its opponents into submission, and inflicting pain upon attorneys and law firms who dare to represent smaller companies asserting their intellectual property rights against MicroStrategy. MicroStrategy must be punished and deterred from further bad faith conduct designed to resolve its disputes through extortion rather than on the merits. The Court should impose serious sanctions commensurate with MicroStrategy's actions.[2]

I.
MicroStrategy Is Attempting to Win This Case, Not on the Merits,
But By Threatening, Intimidating, and Extorting VSi, Susman Godfrey,
and Susman Godfrey's Other Clients

**A. MicroStrategy Threatened to Harm VSi and its Counsel if VSi Refused to Dismiss its Case**

---

(… cont'd)
client VSi, and no other party. Susman Godfrey and Zillow are not parties to this lawsuit.
[2] VSi served this motion for sanctions on MicroStrategy on November 20, 2012, explaining that VSi would consider withdrawing the motion if MicroStrategy complied with the relief sought by the motion. Connors Decl., X-1. In the twenty-one days that passed, MicroStrategy failed to respond.

VSi filed its initial complaint for patent infringement against MicroStrategy on December 23, 2011.  Dkt. No. 1.  Among VSi's counsel in this litigation are Brooke Taylor and Jordan Connors from the law firm Susman Godfrey and Leslie Payne and Eric Enger from the law firm Heim, Payne & Chorush LLP.  Among MicroStrategy's counsel is Sean Pak from the law firm Quinn Emanuel Urquhart & Sullivan, LLP.

On September 4, 2012, Mr. Pak placed an unsolicited call to Ms. Taylor and asked to set up a meeting between MicroStrategy, VSi, and counsel for both sides.  Taylor Decl. ¶ 2.  Mr. Pak stated that his client was planning to be "aggressive" in defending against VSi's claims and planned to take "initiatives" toward that end, that his client planned to file re-examination petitions with the USPTO to reexamine VSi's patents and that Mr. Pak wished to fly to Seattle to discuss these "initiatives" with VSi and its counsel.  *Id.*

On September 10, 2012, Mr. Pak met Ms. Taylor and Mr. Connors at the offices of Susman Godfrey in Seattle.  Taylor Decl. ¶ 3; Connors Decl. ¶ 2; Payne Decl. ¶ 2.  During the meeting, Mr. Pak initiated a conference telephone call that included MicroStrategy's Executive Vice President and General Counsel, Jonathan Klein,[3] as well as VSi's counsel, Mr. Enger and Mr. Payne, and VSi's executives, Mark Vasudevan and Helen Vasudevan.  Taylor Decl. ¶ 3; Connors Decl. ¶ 2; Payne Decl. ¶ 2.  During the call, Mr. Klein threatened VSi and the law firm Susman Godfrey if VSi did not immediately dismiss its claims against MicroStrategy.  Taylor Decl. ¶ 3; Connors Decl. ¶ 2; Payne Decl. ¶ 2.  Mr. Klein stated the following:

- MicroStrategy will not pay VSi anything to settle VSi's patent infringement claims against MicroStrategy;

- MicroStrategy intends to make VSi's litigation of its claims against MicroStrategy as painful as possible for VSi;

---

[3] Mr. Klein has recently been promoted, and his new title is President and Chief Legal Officer of MicroStrategy.

- If VSi does not immediately dismiss all of its claims against MicroStrategy, MicroStrategy will file petitions with the USPTO to reexamine all of VSi's patents;

- If VSi does not immediately dismiss all of its claims against MicroStrategy, MicroStrategy will take action against Susman Godfrey;

Taylor Decl. ¶ 3; Connors Decl. ¶ 2; Payne Decl. ¶ 2.  Mr. Payne asked Mr. Klein what he meant when he said that MicroStrategy will take action against Susman Godfrey; Mr. Klein responded with a statement to the effect of:  "you'll have to wait and see."  Taylor Decl. ¶ 4; Connors Decl. ¶ 3; Payne Decl. ¶ 3.

VSi declined to dismiss its claims in the face of MicroStrategy's threats.

**B. MicroStrategy Has Begun to Carry Out its Threats to Harm VSi and Susman Godfrey**

True to its word, MicroStrategy has begun to carry out its threats against VSi and Susman Godfrey.

On September 14, 2012, MicroStrategy filed a series of requests with the USPTO for *inter partes* review of four of VSi's patents, despite the fact that two of these patents had already been upheld during a prior re-examination over myriad prior art.  Connors Decl., X-2; X-3; X-4; X-5. Four of the seven prior art references cited by MicroStrategy's request have already been before the USPTO and have been found not to invalidate some of VSi's patents.

On October 29, 2012, MicroStrategy filed a petition for *inter partes* review of a patent owned by Susman Godfrey's client Zillow. Connors Decl., X-6.  Zillow's patent, U.S. Patent No. 7,970,674, entitled Automatically Determining a Current Value for a Real Estate Property, Such as a Home, That is Tailored to Input From a Human User, Such as its Owner ("Zillow Patent"), relates to automatic real estate valuations.  Connors Decl., X-7 (Zillow Patent).

MicroStrategy admitted when it filed its petition for review of the Zillow Patent—signed by MicroStrategy's Mr. Klein—that it was aware that the patent was being asserted by Zillow in a patent infringement lawsuit against Zillow's online real estate competitor Trulia, Inc:

> Petitioner is aware that the '674 patent has been involved in litigation. Specifically, Petitioner understands that the '674 patent has been involved in a case pending in U.S. District Court for the Western District of Washington, stylized Zillow, Inc. v. Trulia, Inc. (Docket No. 4:12cv1549).

Connors Decl., X-6 at 1, 62.  As is evident from the public docket sheet for the case, Zillow's counsel in the lawsuit involving the Zillow Patent is Ms. Taylor and Mr. Connors of Susman Godfrey.  Connors Decl., X-8 at 1.

**C. MicroStrategy's Petition for *Inter Partes* Review of Zillow's Patent is Unrelated to MicroStrategy's Business and Is Clearly Intended to Harm Susman Godfrey and VSi**

MicroStrategy is a publicly-traded business intelligence software corporation.  In its most recent Form 10-K Annual Report, MicroStrategy describes its business as involving the sale of business intelligence software to businesses and organizations:

> ***MicroStrategy is a global provider of enterprise software platforms for business intelligence, mobile intelligence, and social intelligence applications*** (apps). Our business intelligence (BI) software platform enables leading organizations worldwide to analyze the vast amounts of data available to their enterprises to make better business decisions. Companies choose MicroStrategy BI for its ease-of-use, sophisticated analytics, performance, and superior data and user scalability. In 2011, MicroStrategy invested significantly in a number of software technologies designed to help organizations capitalize on four disruptive technology trends: Big Data, Mobile, Cloud, and Social. These forces are reshaping companies, industries, and economies around the world. The enterprise-grade MicroStrategy BI Platform™ — in combination with the MicroStrategy Mobile App Platform™, MicroStrategy Cloud™, and the MicroStrategy Social Intelligence Platform™ — provides an integrated tool-kit for companies to create solutions that harness these forces.

Connors Decl., X-9 at 4 (emphasis added).  There is no discussion anywhere in MicroStrategy's Annual Report about any business interest in real estate or online real estate companies.  *Id.*  There is no mention of Zillow, Trulia, the Zillow Patent, or any plan to use MicroStrategy's

resources to challenge real estate valuation patents, or any patents at all. *Id.* Zillow, "the leading real estate information marketplace," is focused on an entirely different industry (real estate rather than business intelligence software) and entirely different consumers (buyers, sellers, and renters of real estate rather than businesses and organizations). *See* Connors Decl., X-10 at 4 ("Zillow provides vital information about homes, real estate listings and mortgages through our websites and mobile applications, enabling homeowners, buyers, sellers and renters to connect with real estate and mortgage professionals best suited to meet their needs.").

Indeed, MicroStrategy's petition to place the Zillow Patent into a re-examination before the USPTO is not related to MicroStrategy's business interests—it is MicroStrategy's effort to carry out its threat against Susman Godfrey and extort VSi and its counsel into dismissing VSi's claims in this lawsuit. MicroStrategy's re-examination petition was signed by Mr. Jonathan Klein, the same MicroStrategy General Counsel who stated just a few weeks earlier that MicroStrategy would take action against Susman Godfrey if VSi did not drop its lawsuit. Connors Decl., X-6 at 62. The only connection between MicroStrategy and the Zillow Patent is the fact that Susman Godfrey—and specifically Ms. Taylor and Mr. Connors of Susman Godfrey—represents Zillow in asserting the Zillow Patent in litigation. MicroStrategy's petition to the USPTO was made for an improper purpose.

MicroStrategy's re-examination petition threatens needlessly to cause Zillow to incur legal fees to advocate in support of the Zillow Patent and may result in years of proceedings before the USPTO. *See, e.g.*, *Allergan Inc. v. Cayman Chem. Co.*, 2009 WL 8591844 (C.D. Cal. Apr. 9, 2009) ("Many courts have acknowledged that the reexamination process can take 'years to run its course.'" (quoting *Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*, 2007 U.S. Dist. LEXIS 44107 at *18 (N.D.Cal.2007)); *Cvgnus Telecomms. Tech., LLC v. United World Telecom, L.C.*, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005) (noting reexaminations "generally

take six months to three years"); *Saint–Gobain Performance Plastics Corp. v. Advanced Flexible Composites, Inc.*, 436 F. Supp. 2d 252, 253 (D. Mass. 2006) (observing that average reexamination takes 21 months).  MicroStrategy's effort to interfere with Susman Godfrey's separate litigation matter is evidently the grand reveal of the attack with which Mr. Klein threatened VSi and Susman Godfrey when he said that MicroStrategy planned to harm Susman Godfrey, but he declined to disclose his method of attack.  Taylor Decl. ¶¶ 3-4; Connors Decl. ¶¶ 2-3; Payne Decl. ¶¶ 2-3.

By attacking Susman Godfrey's client's case in a completely unrelated action, and threatening to do so in other actions, MicroStrategy is threatening Susman Godfrey in an attempt to force Susman Godfrey to abandon the instant case.  Vendetta re-examination petitions from completely unrelated parties are harmful to the administration of justice and to the functions of the federal court, as well as that of the patent office.  MicroStrategy should litigate with arguments on the merits, not with extortionate threats and actions.

Moreover, by threatening and harming VSi's counsel, MicroStrategy seeks to deprive VSi of its choice of counsel.  MicroStrategy is a large corporation with vast resources.  Mr. Klein's threat that MicroStrategy will use its resources to attack Susman Godfrey's unrelated clients is an attempt to deter Susman Godfrey, or any other firm for that matter, continuing to represent VSi against MicroStrategy.

MicroStrategy's Rambo litigation tactics in this case are part of a larger pattern of behavior in which MicroStrategy employs legal and administrative procedures as weapons in bad faith to harm its adversaries.  In MicroStrategy's recent patent infringement lawsuit, *MicroStrategy v. Crystal Decisions*, 555 F. Supp. 2d 475 (D. Del. 2008), the court found that MicroStrategy pursued its claims in bad faith, stating:  "MicroStrategy was clearly notified of the defects in its case, yet continued to assert those claims in light of overwhelming evidence to the

1  contrary, and proceeded with arguments that a reasonable attorney would have known were baseless.

2  Such conduct supports bad faith." *Crystal Decisions*, 555 F. Supp. 2d at 481.  The court also stated:

> [MicroStrategy] proceeded on a new theory of infringement that was in direct contrast to representations before the PTO on reexamination. Furthermore, Microstrategy fails to provide an explanation for the mistakes made by Dr. Alexander, or why it was unable to recognize the errors he made. In addition, the timing of Microstrategy's reassessment of the claims calls into question its motives and whether it, in fact, continued this action in good faith. Such conduct by Microstrategy supports bad faith, especially since this court, as affirmed by the Federal Circuit, found the arguments to be so one sided, that is, strongly in favor of BOA.

*Id.* at 482.  As a result of MicroStrategy's bad faith in the *Crystal Decisions* case, the court sanctioned

MicroStrategy and ordered it to pay Crystal Decision's reasonable fees and expenses.  *Id.* at 482.

Judging by MicroStrategy's conduct in this case, the *Crystal Decisions* sanctions have failed to deter

MicroStrategy from continuing its "bad faith" litigation conduct.  The Court should consider the

failure of past sanctions against MicroStrategy to deter its bad faith conduct, as the Court

contemplates the severity of the sanctions to impose here.  *Cf. Kramer v. Tribe*, 156 F.R.D. 96, 104

(D.N.J. 1994) ("As discussed, both the case law interpreting Rule 11 and the amendments make clear

that the purpose of sanctions is to deter future violations, and that sanctions should not be more severe

than those necessary to deter repeated violations of the rule.  It is, therefore, appropriate to consider

past conduct in determining both whether sanctions should be imposed and the nature of any

sanctions to be imposed." (citations omitted))

II.

The Court Should Issue Sanctions Against MicroStrategy

In *Chambers v. NASCO, Inc.,* the Supreme Court held that "[c]ourts of justice are

universally acknowledged to be vested, by their very creation, with power to impose silence,

respect, and decorum, in their presence, and submission to their lawful mandates." 501 U.S. 32,

43 (1991) (internal quotation marks omitted).  That inherent power includes discretion "to fashion

an appropriate sanction for conduct which abuses the judicial process."  *Id.* at 44-45.

Under Supreme Court and Ninth Circuit precedent, "conduct that is 'tantamount to bad faith' is sanctionable." *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1107-08 (9th Cir. 2002) (quoting *Roadway Express, Inc. v. Piper,* 447 U.S. 752, 767 (1980)). Bad faith includes willful actions motivated by vindictiveness, to harass, or for an improper purpose:

> As we recently stated in *Fink,* "[f]or purposes of imposing sanctions under the inherent power of the court, a finding of bad faith does not require that the legal and factual basis for the action prove totally frivolous; ***where a litigant is substantially motivated by vindictiveness, obduracy, or mala fides, the assertion of a colorable claim will not bar the assessment of attorney's fees***." 239 F.3d at 992 (internal quotation marks omitted). In sum, "***sanctions are available if the court specifically finds bad faith or conduct tantamount to bad faith***. Sanctions are available for a variety of types of willful actions, including recklessness when combined with an additional factor such as frivolousness, harassment, or an improper purpose."

*B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1107-08 (9th Cir. 2002) (emphasis added); *see also Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir. 1986) ("This bad-faith exception permitting an award of attorneys' fees is not restricted to cases where the action is filed in bad faith. An inherent power award may be imposed either for commencing or for continuing an action in bad faith, vexatiously, wantonly, or for oppressive reasons. '[B]ad faith' may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation.'" (quoting *Hall v. Cole*, 412 U.S. 1, 15 (1973))).

Attempts to intimidate or threaten an opposing party's attorney (even without actually carrying out the threats) can constitute bad faith and justify the imposition of sanctions, including dismissing counterclaims and awarding attorneys' fees and expenses. In *Fidelity Nat. Title Ins. Co. of New York v. Intercounty Nat. Title Ins. Co.*, the court dismissed the counter-claimant Fidelity's claims with prejudice and awarded the opposing party its reasonable attorneys fees after Fidelity threatened opposing counsel. 2002 WL 1433717, at \*13 (N.D. Ill. July 2, 2002). The court stated:

> After careful consideration of alternative sanctions, the court finds dismissal of Cornell's counterclaims against Fidelity is warranted. Cornell's February 8th

letter was a direct attempt to influence the outcome of this action—to thwart Fidelity's prosecution of its claims by threatening its attorney. . . . Dismissal with prejudice of Cornell's counterclaims against Fidelity is an appropriate sanction. In addition, Fidelity is awarded reasonable attorneys' fees and expenses incurred in connection with its motion for sanctions.

*Id.*

Additionally, courts have routinely found that threatening to file—or actually filing—an action for the purpose of extorting a settlement in another action constitutes willful conduct for an improper purpose, and justifies the imposition of sanctions under the court's inherent authority. In *Galanis v. Szulik*, 841 F. Supp. 2d 456 (D. Mass. 2011), the defendant Szulik had earlier filed a separate lawsuit in North Carolina for fraud and conspiracy that implicated Galanis. *Id.* Galanis later sued Szulik in Massachusetts and attempted to use the claims against Szulik as leverage to force Szulik to dismiss the North Carolina action. *Id.* The court invoked its inherent powers to sanction Galanis and his counsel, stating:

[T]he Court will invoke its inherent powers to sanction the plaintiff and his counsel for filing a frivolous lawsuit for an improper purpose. It is apparent that this action was filed to extort a quick settlement from Szulik and intimidate him into releasing potential claims against Galanis in the North Carolina litigation. ***Sanctions will remind plaintiff and his lawyers that the federal court system is not to be used to settle personal grudges and should deter them from engaging in similar conduct in the future***. In addition to sanctioning plaintiffs for their misconduct, an award of reasonable attorneys' fees and expenses will help defray the costs incurred by Szulik in defending against this frivolous action.

*Id.* at 461 (emphasis added); *see also Fuoco v. Wells*, 2005 WL 2317750, at *1 (M. D. Fla. Jul. 25, 2005) ("There is no question of the Court's authority to impose sanctions for the misconduct at issue here. Bad faith includes the making of extortionate threats."); *Molski v. Mandarin Touch Restaurant*, 347 F. Supp. 2d 860, 865 (C.D. Cal. 2004) (sanctioning plaintiff under court's inherent powers because plaintiff filed lawsuits "maliciously, in order to extort a cash settlement," and holding that "bad faith 'does not require that the legal and factual basis for the action prove totally frivolous; where a litigant is substantially motivated by vindictiveness, obduracy, or mala

fides'" (quoting *Fink v. Gomez*, 239 F.3d 989, 992 (9th Cir. 2001); *Martin v. Automobili Lamborghini Exclusive, Inc.,* 307 F.3d 1332, 1336 n.2 (11th Cir. 2002) (upholding district court imposition of sanctions against party for bad faith conduct including "using letters threatening class-action litigation to extort settlement offers from Appellees without any intent of filing a case").

In this case, MicroStrategy is subject to sanctions under the Court's inherent powers because it acted in bad faith. *First*, MicroStrategy acted in bad faith when Mr. Klein threatened to harm VSi's counsel Susman Godfrey if VSi did not immediately agree to dismiss its claims against MicroStrategy. Under *Fidelity*, threats like MicroStrategy's with the purpose of "thwart[ing] [VSi's] prosecution of its claims by threatening its attorney" constitute sanctionable bad faith. *Fidelity Nat. Title Ins. Co.*, 2002 WL 1433717, at *13. The Court should insist that MicroStrategy defend this lawsuit on the merits rather than resort to threats and intimidation tactics to scare away VSi and its counsel.

*Second*, MicroStrategy acted in bad faith when it carried out its threat and used its resources to harm Susman Godfrey by filing a re-examination petition completely unrelated to any MicroStrategy business or interest. MicroStrategy's re-examination petition was motivated by the same vindictiveness and extortionate purpose that led to sanctions in the myriad cases cited above. MicroStrategy's purpose is not difficult to discern, as MicroStrategy's own general counsel, Mr. Klein, stated plainly that MicroStrategy would use its resources against VSi and Susman Godfrey if VSi did not drop its lawsuit. Just a few weeks later, after VSi declined to drop the suit, Mr. Klein carried out his threat to harm Susman Godfrey when he signed the re-examination petition of the Zillow's patent—a patent completely unrelated to MicroStrategy's business.

MicroStrategy's actions are deplorable; they are an attempt to fight against VSi with schoolyard bullying rather than a defense on the merits; they are a waste of USPTO resources; they are clearly "motivated by vindictiveness, obduracy, or mala fides" and thus constitute bad faith; and they are sanctionable.  The Court should impose severe sanctions on MicroStrategy to punish it, to deter it from continuing to carry out its threats against VSi and its counsel in this case, and to send a message to MicroStrategy that its wealth and resources do not place it above the rule of law and do not immunize it from having to fight its legal battles in court on the merits.

III.

The Court Should Fashion an Appropriate Set of Sanctions
Designed to Punish MicroStrategy and Deter Similar Bad Faith Conduct

Under the Court's inherent authority "to punish bad faith conduct which abuses the judicial process, a court must exercise discretion in fashioning an appropriate sanction . . . . District judges have an arsenal of sanctions they can impose . . . include[ing] monetary sanctions, contempt, and the disqualification of counsel." *Erickson v. Newmar Corp.*, 87 F.3d 298, 303 (9th Cir. 1996).  Appropriate sanctions for bad faith conduct "may be punitive" and "must be severe enough to have some deterrent effect without being excessive and risking that the sanctioned party would have an inability to satisfy the sanction's terms." *Dubuc v. Green Oak Twp.*, 2010 WL 3245324, at *10 (E.D. Mich. Aug. 16, 2010).  Courts have considered the following objectives in exercising their authority to fashion appropriate sanctions for bad faith conduct:

> (1) penalize those whose conduct may be deemed to warrant such a sanction; (2) deter parties from engaging in the sanctioned conduct; (3) place the risk of an erroneous judgment on the party who wrongfully created the risk; and (4) restore the prejudiced party to the same position he would have been in absent the [sanctionable conduct].

*Kopitar v. Nationwide Mut. Ins. Co.*, 266 F.R.D. 493, 500 (E.D. Cal. 2010); *see also Ashker v. Rowland*, 131 F.3d 145 (9th Cir. 1997) ("A district court, under its inherent powers, has the discretion to fashion an appropriate sanction against a party who willfully abuses the judicial

process." (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45 (1991)).

With these principles in mind, VSi respectfully requests that the Court consider the following sanctions for MicroStrategy's bad faith conduct in attempting to extort a dismissal by threatening to harm, and indeed acting to harm, VSi and its counsel:

> (1) Order MicroStrategy to file with the USPTO in the action challenging Zillow's patent, the following statement: "MicroStrategy has challenged the patent at issue here for the improper purpose of attempting to extort a settlement from Vasudevan Software, Inc. in the case *Vasudevan Software, Inc. v. MicroStrategy*, Case No. 3:11-06637-RS-PSG (N.D. Cal. 2011). A federal court has found that MicroStrategy filed the petition challenging the patent at issue here in bad faith, and has imposed sanctions on MicroStrategy for doing so. MicroStrategy is obligated to file this statement with the United States Patent and Trademark Office as one of those sanctions. MicroStrategy has been ordered by the federal court to participate no longer in the instant re-examination and MicroStrategy accordingly wishes to withdraw the instant re-examination petition."

> (2) Order MicroStrategy to pay the reasonable attorneys fees that Zillow incurs in defending the validity of its patent before the USPTO in the proceedings that result from MicroStrategy's *inter partes* petition.

> (3) Order MicroStrategy to pay the reasonable attorneys fees to VSi for the time that VSi's attorneys have spent in prosecuting this motion for sanctions.

> (4) Order that the jury in this case be instructed that: "The Court has found that MicroStrategy, during the course of this litigation, wrongfully threatened to harm VSi and its counsel unless VSi immediately dismissed its claims against MicroStrategy. MicroStrategy then carried out these threats by using its resources to interfere with VSi's counsel's business and client relationships in a case that was totally unrelated to this one. MicroStrategy took this action to harm VSi's counsel for the purpose of intimidating and coercing VSi into dismissing its claims. The Court has found that MicroStrategy's conduct was abusive and highly improper."

The first three proposed sanctions attempt to serve the purpose of restoring the prejudiced parties to the same position they would have been in absent the misconduct. Proposed sanction (1), the statement to be filed with the USPTO, would alert the USPTO to MicroStrategy's improper purpose in filing the re-examination petitions, which will have the effect of reducing the resources that the USPTO must use to resolve MicroStrategy's petition, and reducing the prejudice Zillow,

Susman Godfrey, and VSi face as a result of MicroStrategy's use of the USPTO processes for improper purposes. Such a sanction is similar to that imposed in *Molski v. Mandarin Touch Rest.*, 347 F. Supp. 2d 860, 866-67 (C.D. Cal. 2004), when the court ordered a vexatious litigant to file a copy of the court's order describing the litigants bad faith conduct along with every new complaint that the vexatious litigant filed in order to "allow the reviewing judge to assess whether Molski had raised a bona fide claim of discrimination under the ADA, or whether he was merely bringing another vexatious claim in order to strong arm a business into settling." *Id.* at 866-67.

Proposed sanctions (2) and (3) seek to shift the costs of legal fees imposed by MicroStrategy's bad faith from the parties prejudiced by MicroStrategy's abuse of process to MicroStrategy. An award of attorneys fees necessitated by the bad faith conduct at issue is well within the court's inherent authority. *See Kelly v. U.S. Bank*, 2010 WL 2817292 (D. Or. June 25, 2010) ("Here, attorney fees as a sanction should be awarded against Kelly in an amount equal to the amount which will compensate U.S. Bank for the time its attorneys reasonably incurred to respond to Kelly's direct communications to the bank's senior executives about this case, and to prepare, file, and argue its three motions for sanctions. An award of fees vindicates the court's authority by giving meaning to the court's orders and consequence to their violation.").

Proposed sanction (4) serves the purpose of punishing MicroStrategy for its bad faith conduct and deterring future similar actions on the part of MicroStrategy. MicroStrategy's motivation in threatening and harming VSi and Susman Godfrey in this action was to obtain an upper hand in settlement discussions and to coerce VSi into dropping its claims against MicroStrategy. MicroStrategy's misconduct should not go undisclosed to the jurors who will decide this case, as MicroStrategy's attempt to coerce a dismissal rather than fight the case on the merits is evidence of the weakness of MicroStrategy's defenses. Ordering that the jury be instructed about MicroStrategy's bad faith would bring it to the light of day, and would, along

1    with the other proposed sanctions, strike the appropriate balance by being "severe enough to have

2    some deterrent effect without being excessive and risking that the sanctioned party would have an

3    inability to satisfy the sanction's terms."   MicroStrategy will, at trial, be able to litigate on the

4    merits, not by extortionate tactics.

5
         The sanctions proposed aim to put the parties in the same position they would be in absent
6
     MicroStrategy's bad faith and to deter further abuses by MicroStrategy.   Failing to implement
7
     such sanctions risks future bad faith conduct by MicroStrategy.   The Court should impose swift
8
     and severe sanctions to ensure that MicroStrategy ceases to carry out its threats to do further harm
9
     to VSi and Susman Godfrey.
10

11                                              IV.
                                            Conclusion
12

13       For the foregoing reasons, VSi respectfully requests that the Court grant its motion and

14   impose sanctions against MicroStrategy for its bad faith, its threats and intimidation, and its effort

15   to extort VSi into dismissing its lawsuit.

16

17   Dated: December 12, 2012.                    SUSMAN GODFREY LLP

18                                                By: /s/ Brooke A. M. Taylor
19                                                Brooke A. M. Taylor
                                                  Lead Attorney
20                                                WA Bar No. 33190 (Admitted *Pro Hac Vice*)
                                                  btaylor@susmangodfrey.com
21                                                Jordan W. Connors
                                                  WA Bar No. 41649 (Admitted *Pro Hac Vice*)
22                                                jconnors@susmangodfrey.com
23                                                SUSMAN GODFREY L.L.P.
                                                  1201 Third Avenue, Suite 3800
24                                                Seattle, Washington 98101-3000
                                                  T: (206) 516-3880
25                                                F: (206) 516-3883

26                                                Stephen E. Morrissey
27                                                CA Bar 187865
                                                  smorrissey@susmangodfrey.com
28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, CA 90067-6029
T: (310) 789-3103
F: (310) 789-3150

Michael F. Heim
TX Bar No. 09380923 (Admitted *Pro Hac Vice*)
mheim@hpcllp.com
Leslie V. Payne
TX Bar No. 00784736 (Admitted *Pro Hac Vice*)
lpayne@hpcllp.com
Eric J. Enger
TX Bar No. 24045833 (Admitted *Pro Hac Vice*)
eenger@hpcllp.com
Nick P. Patel
TX Bar No. 24076610 (Admitted *Pro Hac Vice*)
npatel@hpcllp.com
HEIM, PAYNE & CHORUSH, LLP
600 Travis Street, Suite 6710
Houston, Texas 77002-2912
T: (713) 221-2000
F: (713) 221-2021

ATTORNEYS FOR VSI

1

## **CERTIFICATE OF SERVICE**

2

   I HEREBY CERTIFY that on this 12th day of December 2012, that a copy of the

3

foregoing, and the accompanying declaration and exhibits, were filed electronically through the

4

Court's CM/ECF system, with notice of case activity automatically generated and sent

5

electronically to counsel of record for all parties.

6

7
                                         */s/ Jordan Connors*
                                         Jordan Connors

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---