UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | |
|---|---|---|
| VASUDEVAN SOFTWARE, INC., | ) | Case No.: 11-cv-06637-RS-PSG |
| Plaintiff, | ) ) | **ORDER GRANTING-IN-PART PLAINTIFF'S MOTION TO COMPEL PRODUCTION** |
| v. | ) ) | |
| MICROSTRATEGY INC., | ) ) | **(Re: Docket No. 124)** |
| Defendant. | ) ) | |

In this patent infringement case, Plaintiff Vasudevan Software, Inc. ("VSI") moves to compel production from Defendant MicroStrategy Inc. ("MicroStrategy") of two broad categories of documents: (1) board minutes, financial and projection documents, and accounting documents related to VSI's damages claims; and (2) various documents from other patent litigation in which MicroStrategy was involved. The court has considered the parties' papers and oral arguments and GRANTS-IN-PART VSI's request.

**I. DISCUSSION**

The parties are familiar with the facts of the case and with their dispute here, and so the court does not repeat those facts. In considering a motion to compel, the court relies on the standards provided in Fed. R. Civ. P. 26(b). Fed. R. Civ. P. 26(b) provides that parties "may obtain

1

Case No.: 11-6637 RS (PSG)
ORDER

discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." The relevant information "need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Relevance under Rule 26(b) is broadly defined, "although it is not without ultimate and necessary boundaries."[1]

The court must limit the frequency or extent of discovery if it is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, or the burden or expense of the proposed discovery outweighs its likely benefit. Upon a motion to compel pursuant to Fed. R. Civ. P. 37(a)(3), the moving party has the burden of demonstrating relevance.[2]

A.   **Financial Documents**

The court first addresses the financial documents conflict. In pursuit of discovery for its damages claims, VSI served on MicroStrategy several requests for production in which VSI sought among other things documents relating to MicroStrategy's financial projections, service and sales revenues, and board minutes relating to the products VSI accuses as infringing.[3] According to VSI, MicroStrategy agreed to produce responsive financial documents but provided only SEC public filings and two documents consisting of spreadsheets of licensing revenues for the accused product.[4] MicroStrategy claims that it has produced all responsive, non-duplicative financial information before a deadline to which the parties agreed even if not before VSI brought this motion.[5] MicroStrategy further asserts any other documents VSI requests are duplicative of the

---

[1] *See Gonzales v. Google Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) (internal citations and quotations omitted).

[2] *See Soto v. City of Concord*, 162 F.R.D. 603, 610 (N.D. Cal. 1995).

[3] *See* Docket No. 124 Ex. 1.

[4] *See* Docket No. 124 Exs. 6, 7.

[5] *See* Docket No. 136.

2

Case No.: 11-6637 RS (PSG)
ORDER

produced records or irrelevant to the damages claims.[6]  VSI replies that MicroStrategy in fact has not provided all of the responsive documents in its possession.[7]

The court finds VSI's requests fall within the broad scope of relevancy under Rule 26. Particularly given the *Georgia-Pacific* factors requiring VSI to show the relative value of the allegedly infringing patented features,[8] information about the value of the accused products and their other features is obviously relevant.  Having said that, the court is unclear whether MicroStrategy has other responsive documents because VSI has not provided evidence of withholding beyond its belief that MicroStrategy must have more documents.[9]  To the extent that MicroStrategy is withholding documents responsive to VSI's requests because they are duplicative or "high-level," MicroStrategy's argument fails and it must turn over those documents.  If MicroStrategy does not have the documents VSI requests, it may say as much.  Per the court's earlier order limiting VSI to financial information for the products actually accused in this case,[10] MicroStrategy may also redact or remove financial information about other products. Microstrategy shall complete its production no later than March 1, 2013.

---

[6] *See id.*

[7] *See* Docket No. 140.

[8] *See Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970) (noting "[t]he established profitability of the product made under the patent; its commercial success; and its current popularity" and "[t]he portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer" are relevant factors to determining a reasonable royalty rate); *see also LaserDynamics, Inc. v. Quanta Computer, Inc.*, 694 F.3d 51, 60 (Fed. Cir. 2012) (applying *Georgia-Pacific* framework).

[9] *See* Docket No. 140 at 7, 9.

[10] *See* Docket No. 86.

3

Case No.: 11-6637 RS (PSG)
ORDER

### B. Documents From Other Litigation

VSI also sought production of numerous documents from past patent litigations in which MicroStrategy was involved.[11] Both parties adopt the court's "technological nexus" standard used during discovery in *Apple, Inc. v. Samsung Electronics, Inc.*[12] to determine in this case whether the documents in the other cases is discoverable for this case.[13] The earlier cases in which MicroStrategy or its subsidiary were parties therefore must involve "the patents-in-suit or patents covering the same or similar technologies, features, or designs as the patents-in-suit" here.[14] Although the parties agree as to what standard the court should apply, they disagree about whether the prior litigation involves sufficiently similar technology or patents to warrant being discoverable in this case. The court provides a brief summary of the four prior cases[15]:

(1) *Diagnostic Systems Inc v. Symantec*: Diagnostic Systems accused MicroStrategy's MicroStrategy 8 product of infringement. According to MicroStrategy, the features accused in this litigation were not offered as part of MicroStrategy 8.

(2) *DataTern v. MicroStrategy*: DataTern accused MicroStratey 9 of infringing a software patent not at issue in this case. According to MicroStrategy, the case currently is stayed and despite its belief that the case is irrelevant to this dispute, it has turned over all of the documents aside from DataTern's responses to MicroStrategy regarding DataTern's patents.

(3) *MicroStrategy v. Business Objects America, Inc.*: MicroStrategy accused Business Objects' product of infringing a feature of MicroStrategy 7.5. According to MicroStrategy, the main feature of MicroStrategy 7.5 is not accused as infringing in this case and two of the features accused in this case were not part of the product at issue in that case.

(4) *Reporting Technologies Inc. v. Emma*: Reporting Technologies Inc. ("RTI"), a wholly-owned subsidiary of MicroStrategy, accused Emma of violating patents that

---

[11] *See* Docket No. 124.

[12] Case No. C 11-1846 LHK (PSG), 2012 WL 2862613, at *2 (N.D. Cal. July 11, 2012).

[13] *See* Docket No. 124, 136.

[14] *Id.*

[15] *See* Docket No. 136.

4

Case No.: 11-6637 RS (PSG)
ORDER

>MicroStrategy contends are unrelated to the technology in this case. MicroStrategy states that with Emma's permission it has produced all documents relating to RTI's patents and confidential information but has not received permission to disclose Emma's confidential information. MicroStrategy further asserts that none of the information is relevant and does not meet the technological nexus.

VSI counters that all of the information it seeks from the four cases falls within the technological nexus of the patents-at-issue in this case because the cases involve either "patent infringement claims against MicroStrategy involving the accused products or earlier versions of the accused products and patents covering similar technology" or "patent infringement claims brought by MicroStrategy/RTI involving patents covering similar technology to that of the patents-in-suit here."[16] VSI also asserts that the information from the other litigation is relevant to determining how MicroStrategy values the patents-at-issue in this case for possible damages calculations.[17]

The starting point of the "technological nexus" standard is not the product; the starting point is the patent-at-issue.[18] Similarity thus arises from whether the other litigation involved patents, technology, or features similar to the patent-at-issue, not whether the other litigation involved patents, technology, or features similar to the product at issue. The court therefore looks to the patents involved in this case, compares them to the patents-at-issue in the four cases for which VSI would like discovery, and assesses whether the technology concerned is sufficiently similar to meet the technological nexus. The context of this request - that VSI seeks the information for its damages claims - also informs the court as to whether VSI's requests are sufficiently relevant under Rule 26.

Turning first to the patents involved in this case, the three patents-at-issue consist of method claims involving instant user modification of OLAP cubes, which provide

---

[16] *See* Docket No. 124 at 10.

[17] *See id.* at 20-21.

[18] *See Apple*, 2012 WL 2862613, at *2 (noting that the similarity must be with the patents-in-suit not the accused products).

5

Case No.: 11-6637 RS (PSG)
ORDER

multidimensional analysis of data.[19]  U.S. Patent No. 6,877,006 ("'006 Patent") describes among other things a method claim where the OLAP cube is "dynamically updat[ed]" when a user updates "specific data displayed from the assembed OLAP cube."[20]  U.S Patent No. 7,167,864 ("'864 Patent") describes a method claim where an OLAP cube "assembled dynamically on demand without accessing a multidimensional database of stored retrieved data," may be updated by users assigned access codes allowing access to certain databases so that the OLAP cubes "receiv[e] and respond[] to a data access request only if the request is from a user with code authorizing access to all relevant constituent databases with the requested data."[21]  U.S. Patent No. 7,720,861 ("'861 Patent") describes a method combining the processes of the '006 Patent and the '864 Patent, thereby allowing users to instantly update the OLAP cube with the database information for which they have an access code.[22]

The court next looks to the technology and features claimed by the patents in the four other cases.  At issue in *Datatern, Inc. v. MicroStrategy* was U.S. Patent No. 6,101,502, which describes a method for "interfacing an object oriented software application with a relational database" involving the creation of a map "of at least some relationships between schema in the database and the selected object model" and using the map "to create at least one interface object associated with an object corresponding to a class associated with the object oriented software application."[23]  In *Diagnostics Systems v. Symantec*, U.S. Patent No. 5,701,400 describes an apparatus "for providing an expert systems toolkit," which includes a program that allows a user to apply certain logic rules

---

[19] *See* Docket No. 44.

[20] *See* Docket No. 103 Ex. 13.

[21] *See id.* Ex. 15.

[22] *See id.* Ex. 14.

[23] *See* Docket No. 140 Ex. 30.

6
Case No.: 11-6637 RS (PSG)
ORDER

to a data set and to indicate the import of the results through a "super diagnostic statement" that is stored in a second database.[24]

VSI claims that the patents involved in *DataTern* and *Diagnostic Systems* "included computer storage medium claims relating to accessing and analyzing data, just like the asserted claims in this lawsuit."[25] But the patents at issue in this case involves instantly updating and changing OLAP cubes and limiting the ability to change the OLAP cube through user access codes.[26] In contrast, the patent in *DataTern* describes a method for allowing an object-oriented software program to access a relational database through mapping the object, the relational database, and a runtime engine.[27] Although the *DataTern* patent, like the patents at issue in this case, involves a relationship between user interfaces and databases, the relationship described, the type of user interface, and even the type of database are materially different.

The patent in *Diagnostic Systems* likewise claims materially different technology from the patents-at-issue. In *Diagnostic Systems*, the patent describes in part a program that allows users to apply analysis rules to data in an original database, to create a second database with the results of the analysis rules, and to generate expressions connected with the results of the analysis rules.[28] The patent involves relational databases rather than OLAP cubes and describes an application of rules to the relational databases instead of the instant updating software described in the patents-at-issue.

---

[24] *See id.* Ex. 31.

[25] *See id.* at 12.

[26] *See* Docket No. 103 Exs. 13, 14, 15.

[27] *See* Docket No. 140 Ex. 30.

[28] *See id.* Ex. 31.

Case No.: 11-6637 RS (PSG)
ORDER

As to the cases where MicroStrategy was the plaintiff, VSI asserts that because the cases involve OLAP technology, it has shown a sufficient technological nexus to allow discovery.[29] The court notes that VSI failed to provide the patents at issue in *RTI v. Emma* and *MicroStrategy v. Business Objects*. Instead VSI provided the complaint in *Emma*[30] and various court documents from *Business Objects* including a highly redacted version of MicroStrategy's reply brief for a motion for summary judgment.[31] From what the court can glean from the descriptions in the reply brief in *Business Objects*, at issue was a patent describing a method for a user to obtain reports from the OLAP cube onto a webserver without downloading "any executable files."[32] Beyond its bald claim that this patent involves OLAP technology, VSI has failed to show how a patent describing transmission of a report from a database to a webserver by converting the report into HTML is similar to the patents at issue here. The patents in this case describe a method for instantly updating and changing the scope of an OLAP cube, not where or how the results of a query are generated.

As to the *Emma* patents, from the complaint VSI provided the court can only guess at the technology claimed in the patents. In the complaint, RTI alleges Emma infringed on three patents titled as follows: (1) "System and Method for Automatic Transmission of On-Line Analytical Processing System Report Output" (U.S. Patent No. 6,173,310); (2) "System and Method for Automatic Transmission of Personalized OLAP Report Output" (U.S. Patent No. 6,269,393); and (3) "System and Method for Management of an Automatic OLAP Report

---

[29] *See id.* at 12.

[30] *See* Docket No. 124 Ex. 26.

[31] *See id.* Ex. 23.

[32] *See id.*

Broadcast System" (U.S. Patent No. 7,330,847).[33]  VSI offers no further information for the court to determine whether the technology claimed in these patents is similar to the technology described in the patents-at-issue.  Absent the patents involved in the cases, the court finds that VSI's contention that the patents in both cases deal with "OLAP technology" is too broad of a category to meet the technological nexus, especially given the various types of patents the court already has described involving OLAP technology.

Because the court finds that the patents in the four cases for which VSI seeks discovery do not meet the technological nexus that VSI itself propounds, the court DENIES VSI's motion to compel further responses from MicroStrategy.

**IT IS SO ORDERED**.

Dated:  February 15, 2013

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[33] *See id.* Ex. 26.

9

Case No.: 11-6637 RS (PSG)
ORDER