United States District Court
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

VASUDEVAN SOFTWARE, INC.,

Plaintiff,

v.

MICROSTRATEGY INC.,

Defendant.

_______________________________________/

VASUDEVAN SOFTWARE, INC.,

Plaintiff,

v.

TIBCO SOFTWARE INC.,

Defendant.

_______________________________________/

No. C 11-06637 RS
No. C 11-06638 RS

**CLAIM CONSTRUCTION CLARIFICATION ORDER**

I. INTRODUCTION

Plaintiff Vasudevan Software Inc. ("VSi") alleges that the software products of defendants MicroStrategy, Inc. and TIBCO Software, Inc. infringe its U.S. Patent Number 7,167,864 ('864 patent), and that MicroStrategy additionally infringes VSi's U.S. Patent Numbers 6,877,006 ('006 patent), 7,720,861 ('861 patent), and 8,082,268 ('268 patent).[1] Pursuant to *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996), and

[1] Three of those patents were construed in part in a previous action by VSi against defendants IBM and Oracle. *See Vasudevan Software, Inc. v. Int'l Bus. Mach. Corp.*, No. C 09-5897, 2011 WL 196884 at *1 (N.D. Cal. Jan. 20, 2011) (claim construction order).

United States District Court
For the Northern District of California

Patent Local Rule 4-3, three terms found in the claims of the patents were construed in a September 19, 2012 order (Claim Construction Order). As the litigation progressed, a dispute between the parties has emerged over the proper understanding of the construction of the term "disparate [] databases" as "databases having an absence of compatible keys or record identifier columns of similar value or format in the schemas or structures that would otherwise enable linking data."[2] The parties, recognizing that further clarification on the meaning of this term is necessary to resolve various pending motions for summary judgment of non-infringement and to exclude technical experts, request additional guidance from the Court.[3] For the reasons set forth below, the clarification advanced by MicroStrategy will be adopted.

## II. BACKGROUND

The patents in suit relate to business intelligence software technology, and specifically, an alleged invention for dynamically creating, updating, and securing an online analytical processing ("OLAP") cube. All of the asserted patents claim priority to a provisional application filed on July 19, 2000 (the provisional application). That application originally claimed the ability to integrate data from multiple "digital databases." In July of 2003, the PTO rejected that application's pending claims in light of U.S. Patent No. 6,516,324 (Jones). In response, Mark Vasudevan, named inventor of each patent-in-suit, filed an amended application narrowing his claims to recite accessing only "disparate digital databases." The PTO subsequently allowed the revised application to issue as the '864 patent. During claim construction, VSi proposed that "disparate [] databases" be construed as "incompatible databases having different schemas." That construction was rejected in favor of a construction nearly identical to that proposed by defendants. The legal standards applicable to the

---

[2] The claim term appears in claims 1 and 2 of the '006 patent, claims 1 through 4 of the '861 patent, and claims 1, 4, 26, and 29 of the '864 patent.

[3] VSi also contends that "incompatible databases of different types" means something different than the Court's construction of "disparate [] databases." This argument is foreclosed, however, by the Claim Construction Order, which "disregarded" defendants' claim differentiation theory that "incompatible" meant something other than "disparate." *See* Claim Construction Order at 5, n.5. During claim construction, VSi *succeeded* in having its position adopted. It is estopped from now arguing to the contrary.

United States District Court
For the Northern District of California

consideration of the parties' request for clarification follow those set forth in the initial Claim Construction Order.

III. DISCUSSION

| Adopted Construction | VSi's Interpretation | MicroStrategy's Interpretation | TIBCO's Interpretation |
| --- | --- | --- | --- |
| databases having an absence of compatible keys or record identifier columns of similar value or format in the schemas or structures that would otherwise enable linking data | databases having an absence of compatible keys OR an absence of record identifier columns of similar value OR an absence of record identifier columns of similar format in the schemas or structures that would otherwise enable linking data | databases having an absence of compatible keys AND an absence of record identifier columns of similar value AND an absence of record identifier columns of similar format in the schemas or structures that would otherwise enable linking data | databases having an absence of compatible keys |

The parties debate the appropriate scope of the limitation "disparate [] databases." VSi reads the adopted construction in the disjunctive, arguing that a product allowing an OLAP cube to be assembled from databases lacking *any one* of the features identified potentially infringes its patents. Thus, VSi contends that databases are disparate if they have an absence of compatible keys, *or* if they have an absence of record identifier columns of similar value, *or* if they have an absence of record identifier columns of similar format in the schemas or structures that would otherwise enable linking data. MicroStrategy interprets the construction conjunctively. Under this reading, disparate databases are only those that have an absence of compatible keys *and* an absence of record identifier columns of similar value *and* an absence of record identifier columns of similar format in the schemas or structures that would otherwise enable linking data. TIBCO takes a somewhat different tack by arguing that databases are disparate if and only if they have an absence of compatible keys, with the presence or absence in such disparate databases of record identifier columns of similar value or format in the schemas or structures that would otherwise enable linking data not affecting their disparate nature.

The construction about which the parties now seek clarification is nearly identical to that proposed by defendants during claim construction. VSi's proposed construction of "disparate [] databases" as "incompatible databases having different schemas" was rejected in favor of defendants' proposed construction for a number of reasons. Most importantly, defendants' proposed construction was based on a statement made by VSi during prosecution of the '006 patent. The PTO initially rejected VSi's claims as obvious in light of prior art Jones, which, it noted, teaches a method of "accessing with a computer a plurality of digital databases," wherein "the plurality of databases are incompatible to each other." (Exh. A to Pak Decl. in Supp. of Defs.' Claim Constr. Br. at VSI0000239, 242). VSi responded by adding the limitation "disparate" to "digital databases" and arguing that the prior art "access[ed] only one singular database – the multidimensional database – not a plurality of disparate databases," as in the '006 application. (Exh. 21 to Enger Decl. in Supp. of VSi's Claim Constr. Br. at VSI0000267). As VSi went on to explain to the PTO:

> *The disparate nature of the above databases refers to the absence of compatible keys or record identifier (ID) columns of similar value or format in the schemas or structures of the database that would otherwise enable linking data within the constituent databases.* An example of such a common key is a social security number …. <u>In embodiments of Applicant's invention, such a common key is not necessary.</u> The disparate nature extends, for example, to the type of database (Oracle, IBM DB2, Microsoft SQL Server of Object Databases) and the structure, schema, and nature of the databases (i.e., type of the data fields in various tables of the constituent databases).

(*Id.* at VSI0000265) (emphasis in italics added, underline in original).

Given the Federal Circuit's guidance that patentees should be "bound by representations and actions that were taken in order to obtain the patent," the Claim Construction Order adpoted defendants' position that VSi should be bound by its representation to the PTO, which VSi had again embraced during the prosecution of the '861 patent, in order to distinguish prior art Jones. *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1381 (Fed. Cir. 2011) (citations omitted); *see also* Claim Construction Order (citing *Springs Window Fashions LP v. Novo Indus., L.P.*, 323 F.3d 989, 995 (Fed. Cir. 2003) ("The public notice function of a patent and its prosecution history

requires that a patentee be held to what he declares during the prosecution of his patent. A patentee may not state during prosecution that the claims do not cover a particular device and then change position and later sue a party who makes that same device for infringement"). Before the PTO, VSi had "clearly set forth a definition of the disputed term" and that definition, supported by the prosecution history, was adopted during claim construction. *Typhoon Touch*, 659 F.3d at 1382 (citing *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)).

VSi now argues for a broad interpretation of the construction of the term "disparate [] databases" previously adopted, such that the absence of any one of the three specified elements would be sufficient to render a database disparate. Once again, an examination of the prosecution history of the patents-in-suit indicates that VSi took a position before the PTO in order to distinguish its patent over prior art Jones contrary to the one it now advances. When VSi amended its claims to cover only "disparate digital databases" instead of "digital databases" in order to thereby overcome prior art Jones, VSi told the PTO, that "the component databases in Jones et al. rely on common keys that relate the data between the different tables and databases," whereas "[i]n embodiments of Applicant's invention, <u>such a common key value is not necessary</u>." (Exh. 21 to Enger Decl. in Supp. of VSi's Claim Constr. Br. at VSI0000266, VSI0000265) (underline in original). This is a clear representation to the PTO that an absence of compatible keys is necessary to render a database disparate such that it is distinguishable from the prior art.

The interpretation of the construed term that VSi now champions would allow "disparate [] databases" to encompass those *with* common keys, as long as they had an absence of either record identifier columns of similar value *or* an absence of record identifier columns of similar format in the schemas or structures that would otherwise enable linking data. Such an interpretation is inconsistent with VSi's earlier representation to the PTO that its invention is patentable because, unlike Jones, it allows data from databases lacking common key values to be related. While precedent sets a fairly high bar for disavowal during prosecution, requiring "a clear and unmistakable disavowal of scope," here that requirement is met. *Purdue Pharm. L.P. v. Endo Pharms. Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006).

VSi next points to its statement to the PTO that "[t]he disparate nature extends, for example, to the type of database (Oracle, IBM DB2, Microsoft SQL Server of Object Databases) and the structure, schema, and nature of the databases (i.e., type of the data fields in various tables of the constituent databases)" to argue that "an absence of record identifier columns of similar format in the schemas or structures that would otherwise enable linking data" *alone*, such as occurs when two databases are made by different manufacturers (for example, an Oracle and IBM database) should be sufficient to render databases disparate. (*Id.* at VSI0000265) (emphasis in italics added, underline in original). As noted in the Claim Construction Order, "the trouble with VSi's position is that [MicroStrategy]'s construction is *not* necessarily inconsistent with the distinction drawn between databases supplied by different vendors – as VSi's own statements to the PTO make quite clear." Claim Construction Order at 7. Under MicroStrategy's interpretation of the construction, databases from different vendors may be disparate as long as they have an absence of compatible keys, and an absence of record identifier columns of similar value, as neither side has suggested that they have identical record identifiers or formats within the structures or schemas organizing the data. VSi's interpretation, by contrast, would automatically render databases from different vendors disparate *even if they had compatible keys*, a position inconsistent with the statements it made to the PTO in order to distinguish its patent applications over Jones.

The interpretation advanced by defendant TIBCO, however, goes too far in that, while it recognizes the necessity for "disparate [] databases" to have an absence of compatible keys, it would render the rest of the already-adopted construction of that term mere surplusage. During claim construction, TIBCO never argued that an absence of compatible keys alone would render databases disparate. Instead, it joined MicroStrategy in arguing that "disparate [] databases" are "databases having an absence of compatible keys or record identifier (ID) columns of similar value or format in the schemas or structures of the database that would otherwise enable linking data within the constituent databases." The interpretation put forth by TIBCO essentially asks the Court not to clarify an already-adopted construction, but to reopen claim construction entirely, disregard its earlier claim construction position, and embrace a new construction inconsistent with the plain

United States District Court
For the Northern District of California

language of both the Claim Construction Order and VSi's statements to the PTO during the prosecution of its patents.

VSi contends that the MicroStrategy's interpretation similarly strays from the plain language of the claim construction because it substitutes the word "or" for "and." The Federal Circuit has indicated "[t]he proper approach is to construe the claim language using standardized dictionary definitions [where] the claims have no specialized meaning." *Schumer v. Laboratory Computer Sys., Inc.*, 308 F.3d 1304, 1311 (Fed. Cir. 2002). Consistent with that approach, the Federal Circuit has "consistently interpreted the word 'or' to mean that the items in the sequence are alternatives to each other." *Id.* Accordingly, the Federal Circuit has held, for example, that a district court erred in construing claim language stating "one of the following elements is different . . . : location of the point of origin, or angle of rotation, or scale" to mean that the system in question must be capable of translating all three of the listed elements, as opposed to translating "one of the following." *Id.* VSi warns that to adopt MicroStrategy's interpretation would be to commit similar error.

Yet, MicroStrategy's interpretation is not necessarily at war with the plain language of the claim term as previously construed, albeit for an initially counterintuitive reason. As MicroStrategy points out, a basic rule of logic known as De Morgan's law holds that the statement *not* (p *or* q) is equivalent to the statement (*not* p) *and* (*not* q) and, as a logical corollary, the statement *not* (p *and* q) is the same as (*not* p) *or* (*not* q). In this way, "a disjunction may be converted into a conjunction and a conjunction may be converted into a disjunction if (1) the quality (*i.e.*, either affirmative or negative) of the conjunction or disjunction is changed." *See John P. Finan*, Lawgical: Jurisprudential and Logical Considerations 15 Akron L. Rev. 675, 684 (1981) (discussing the use of De Morgan's law to interpret the Uniform Commercial Code and other statutory language). For example, Article II, Section 1 of the United States Constitution establishes that in order to be eligible to hold the office of President of the United States, a person must be a natural born citizen of this country *and* thirty five years old. Another way to state this same proposition is, in order to be eligible to hold the office of President, you must *not* be foreign born *or* under the age of thirty five. Similarly, consistent with common English usage and syntax, the construction of the claim

United States District Court
For the Northern District of California

term "disparate [] databases" written as an *absence* of (A *or* B *or* C) is the same as an (*absence* of A) *and* an (*absence* of B) *and* an (*absence* of C). The basis for the clarification adopted by this order is grounded in the prosecution history of the patents-in-suit as opposed to grammatical rules. It is, nonetheless, instructive to note that the interpretation offered by MicroStrategy is consistent with the construction adopted in the Claim Construction Order, in light of the logical meaning of language as discussed above.

## IV. CONCLUSION

The construction of "Disparate [] databases" as "databases having an absence of compatible keys or record identifier columns of similar value or format in the schemas or structures that would otherwise enable linking data" is clarified to read "databases having an absence of compatible keys and an absence of record identifier columns of similar value and an absence of record identifier columns of similar format in the schemas or structures that would otherwise enable linking data."

IT IS SO ORDERED.

Dated: 9/19/13

RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE