UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VASUDEVAN SOFTWARE, INC.,<br><br>Plaintiff,<br><br>v.<br><br>MICROSTRATEGY, INC.,<br><br>Defendant. | Case No. 11-cv-06637-RS<br><br>**ORDER DENYING MOTION FOR ATTORNEY FEES** |

## I.   INTRODUCTION

Plaintiff Vasudevan Software, Inc. ("VSi") commenced this action in December 2011 against defendant Microstrategy, Inc. ("MS") for infringement of claims within four patents, including U.S. Patent Nos. 6,877,006 B1 (the '006 Patent), 7,167,864 B1 (the '864 Patent), 7,720,861 B1 (the '861 Patent), and 8,082,268 B2 (the '268 Patent).[1]   In October 2013, subsequent to a claim construction clarification order favoring MS, the parties stipulated to a summary judgment finding of non-infringement, and MS's motion for summary judgment of invalidity as to all four patents was granted.  On appeal, the Federal Circuit affirmed the finding of non-infringement and underlying claim construction, and reversed and remanded the finding of invalidity.  Having now stipulated to voluntary dismissal of its invalidity claims, MS moves for

---

[1] In a separate suit, VSi sued TIBCO for infringement of claims in the '864 patent.  The parties to that action have since stipulated to a dismissal with prejudice, and the case was closed.

attorney fees and costs totaling $3,680,023 pursuant to the Patent Act fee-shifting provision, 35 U.S.C. § 285, characterizing this as an "exceptional" case based on both the substantive strength of VSi's claims and the manner in which it litigated the case.  In that the "exceptional" label is not warranted here even under the more inclusive standard recently articulated by the Supreme Court in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), MS's motion must be denied.[2]

## II. BACKGROUND

A. Factual Background

### 1. *Patents-In-Suit*

The patents-in-suit relate to VSi's MIDaS business intelligence software, a federated database system that dynamically retrieves data from disparate databases to create and display to users a data structure called an online analytical processing ("OLAP") cube.  An OLAP cube is a data structure with more than two dimensions which provides online analytical processing.  The patents-in-suit assert that, absent their innovation, OLAP cubes require data from different databases to be converted into a compatible format and stored in a single intermediary warehouse prior to analysis.  Such data is thus "stale" by the time it is analyzed.

VSi's claimed inventions solve this problem with a system that transmits data on demand from various source databases directly to the OLAP cube for analysis, without passing through an intermediate repository.  The claims of the '006, '864 and '861 patents all recite a system that accesses "disparate . . . databases," while the claims of the '268 patent employ the expression "incompatible databases of different types."  VSi averred that MS's product MicroStrategy 9 infringes claims in each of the four asserted patents.  MS responded with counterclaims of

---

[2] While the analysis and argument in MS's motion focuses solely on Section 285 grounds for shifting fees, MS also makes reference to both 28 U.S.C. § 1927, enabling judicial discretion to impose expenses and fees for unreasonable or vexatious litigation practices, and courts' inherent power to sanction bad faith conduct.  For the reasons discussed herein, however, consideration of VSi's conduct under these latter two authorities also does not warrant fee-shifting or other sanctions.

invalidity.

### 2. *Prosecution History*

VSi's initial assertion that its independent claims required "accessing with a computer a plurality of digital databases and retrieving with a computer requested data from such databases" was rejected as obvious in light of prior art in the form of U.S. Patent No. 6,516,324 ("Jones"). Smith Decl., Ex. 1, p. 1. To its original application, VSi therefore added the qualifier "disparate" before "digital databases," and explained to the PTO that "disparate":

> refers to the absence of compatible keys or record identifier columns of similar value or format in the schemas or structures of the database that would otherwise enable linking data within the constituent databases. An example of such a common key is a social security number . . . . In embodiments of Applicant's invention, such a common key is not necessary. The disparate nature extends, for example, to the type of database (e.g. Oracle, IBM DB2, Microsoft SQL Server or Object Databases) and the structure, schema, and nature of the databases (i.e., type of data field in various tables of the constituent databases) . . . .

Smith Decl., Ex. 1, p. 44. In addition to quoting the above passage in its motion, MS also quotes a select sentence that appears several paragraphs below it in its excerpted prosecution history: "Further, the component databases in Jones et al. rely on common keys that relate the data between the different tables and databases." *Id.* at 45. During prosecution, the named inventor, Mark Vasudevan, also asserted other distinctions between his patents and Jones—for instance, that Jones operates using a single multidimensional database populated offline, rather than by pulling data directly from different databases into the OLAP cube. *Id.*

B. Procedural History

At the claim construction stage, VSi initially advanced as a meaning of "disparate databases" "incompatible databases having different schemas," while defendants, referencing Vasudevan's statements before the PTO, championed the definition "databases having an absence of compatible keys or record identifier (ID) columns of similar value or format in the schemas or structures of the database that would otherwise enable linking data within the constituent databases." Claim Construction Order, p. 5. The parties did not dispute that MS's product relies

1    on compatible keys.  MS's construction would, therefore, have indubitably precluded it from
2    infringement liability.
3         Emphasizing Vasudevan's reference to varied commercial database brands as an example
4    of disparateness in his statements to the PTO, VSi contended that the prosecution history failed to
5    "set forth a [clear] definition of the disputed term" and was therefore not binding on future
6    proceedings.  *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1381 (Fed. Cir. 2011).  The
7    claim construction order concluded, however, that there was nothing ambiguous about the
8    description of "disparate databases" offered before the PTO, for its reference to different vendors
9    was entirely consistent with MS's proposed construction.  The order thus ruled for MS and held
10   the description offered during prosecution history to be binding.  In the weeks that followed, MS
11   proposed the parties stipulate to non-infringement, to which VSi initially declined.
12        Instead, the claim construction order gave rise to a further dispute focused on whether the
13   construction was to be interpreted disjunctively, thereby encompassing MS's product due to its
14   reliance on common keys, or conjunctively.  In April 2013, VSi filed an expert report asserting an
15   infringement theory based on the ability to access and join tables marked by the presence of
16   differences such as different column names or different data formats.  That July, it filed a motion
17   to strike MS expert testimony on the grounds that MS's experts had employed an incorrect
18   interpretation of the court's construction of "disparate databases."
19        As a result, this Court issued a September 19, 2013 clarification order.  That order adopted
20   MS's conjunctive interpretation, explaining that "disparate databases" are "databases having an
21   absence of compatible keys *and* an absence of record identifier columns of similar value *and* an
22   absence of record identifier columns of similar format in the schemas or structures that would
23   otherwise enable linking data."  Clarification Order, p. 5.  The order stated expressly that the
24   patentability of VSi's innovation hinged on Vasudevan's representation that "unlike Jones, [VSi's
25   invention] allows data from databases lacking common key values to be related," and found this to
26   comprise a clear disavowal of scope.  Clarification Order, p. 5.  Secondarily, addressing VSi's
27   grammatical argument focused on the use of the word "or," the order adopted MS's contention

that under DeMorgan's Theorem (the statement *not* (p *or* q) is grammatically equivalent to (*not* p) *and* (*not* q)), the proper reading should be in the conjunctive.

The following month, VSi stipulated to non-infringement, and summary judgment of invalidity was granted as to all four patents. VSi filed an appeal to the Federal Circuit in November 2013. On April 10, 2015, the Federal Circuit affirmed the claim construction clarification order and finding of non-infringement, and reversed and remanded the finding of invalidity. On remand, MS voluntarily dismissed its invalidity claims, rendering judgment in this matter final and the present motion ripe for adjudication.

### III.   LEGAL STANDARD

Section 285 invests the district court with discretion to award reasonable attorney fees in patent infringement actions to the prevailing party in "exceptional cases." "This text is patently clear. It imposes one and only one constraint on district courts' discretion to award attorney's fees in patent litigation: The power is reserved for 'exceptional' cases." *Octane*, 134 S. Ct. at 1755–56.

Before the decision in *Octane*, the Federal Circuit had limited fee shifting to patent cases in which the prevailing party demonstrated, by clear and convincing evidence, either (1) litigation misconduct; or (2) that the litigation was both objectively baseless *and* brought in subjective bad faith. *Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc. ("Brooks Furniture")*, 393 F.3d 1378, 1381–82 (Fed. Cir. 2005). In the first scenario, a court could award fees only "when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions." *Brooks Furniture*, 393 F.3d at 1381. "Absent misconduct in conduct of the litigation or in securing the patent, [fees] may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless." *Id.* In the alternative, a court could award fees where it found that the patentee's position is "so unreasonable that no reasonable litigant could believe it would succeed" and that the patentee "actually

know[s]" that to be true. *iLOR, LLC v. Google, Inc.*, 631 F.3d 1372, 1377–78 (2011); *see Octane*, 134 S. Ct. at 1754.

*Octane* rejected this "rigid and mechanical formulation." *Octane*, 134 S. Ct. at 1754. With regard to litigation misconduct, the Court diverged from the Federal Circuit's focus on sanctionable conduct, holding that "a district court may award fees in the rare case in which a party's unreasonable conduct—while not necessarily independently sanctionable—is nonetheless so 'exceptional' as to justify an award of fees." *Octane*, 134 S. Ct. at 1757. Nor must the district court find that the litigation was both objectively baseless and brought in subjective bad faith to award fees. "[A] case presenting *either* subjective bad faith *or* exceptionally meritless claims may sufficiently set itself apart from mine-run cases to warrant a fee award." *Id.* (emphasis added).

Construing the term "exceptional" in accordance with its ordinary meaning of "uncommon," "rare," or "not ordinary," the Court in *Octane* held that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1756. District courts are instructed to exercise their discretion on a case-by-case basis, considering the totality of the circumstances and applying a preponderance of the evidence standard. *Id.* at 1756, 1758. Rejecting the Federal Circuit's then-existing framework, the Court suggested district courts look to "nonexclusive" factors it previously set forth concerning a similar provision of the Copyright Act, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Octane*, 134 S. Ct. at 1756, n.6 (quoting *Forgerty v. Fantasy*, 510 U.S. 517, 534, n.19 (1994)).

## IV. DISCUSSION

A. Substantive Strength of the Claims

According to MS, VSi's pursuit of this litigation rose to an exceptional level at two junctures. The first was VSi's initial decision to sue MS for infringement when, during patent

prosecution, VSi had proclaimed its invention distinguishable from prior art on the basis that use of VSi's technology does not require databases to share common keys—a key and undisputed difference between VSi's invention and MS's product.  The second was marked by VSi's refusal to stipulate to non-infringement after the initial claim construction order when, in MS's view, the order confirmed that the novelty of VSi's invention hinged on the absence of common keys.  While this Court and the Federal Circuit ultimately found the absence of common keys dispositive, this was by no means a conclusion sufficiently obvious—either from this case's outset, or pursuant to the initial claim construction—to warrant fee-shifting.

Fees have been awarded for litigation pursued in spite of case-dispositive specifications or prosecution histories only in instances where the plaintiff asserted its claims in bad faith, proposed a "frivolous" claim construction, "ignored the entirety" of the specification and prosecution history, and derived no support from the intrinsic record.  *MarcTec, LLC v. Johnson & Johnson*, 664 F.3d 907 (Fed. Cir. 2012) (affirming fee award in a case subject to the more stringent pre-*Octane* standard).  Fees were warranted in *MarcTec* for reasons not present here.  *MarcTec* concerned a surgical implant whose inventor distinguished his application from prior art during prosecution by both asserting that his invention included a coating material that adhered with application of heat (a process he defined as "bonding"), and disavowing the implant's classification as an intraluminal graft, or stent.  Undisputed evidence demonstrated, by contrast, that the allegedly infringing product involved a coating that adhered at room temperature and constituted a stent.  While the inventor clearly stated before the PTO that "bonding" involves heat, the plaintiff nevertheless urged the district court to adopt a directly-contradictory, plain-meaning construction of the term.  The Federal Circuit affirmed the district court's construction of the term "bonded" as necessitating heat, based on the prosecution history, and the finding of non-infringement flowing therefrom.  In so doing, it noted that the plaintiff could not "claim to be ignorant of the references to heat in the claims, the language in the specification discussing the importance of heat to the bonding process, or [the inventor's] statements to the PTO."  *Id.* at 918-19.

VSi did not claim ignorance, nor did it disregard Vasudevan's presentation before the PTO. Rather, VSi fashioned its argument upon statements made during prosecution other than those later held to be dispositive. It urged a holistic reading of Vasudevan's explanation of the term "disparate"—including language which, it contended, included within the ambit of "disparate databases" those made by different vendors or using different types of data fields, as well as those lacking common keys. VSi's contention that the prosecution history did not offer a clear definition of the term coupled with its definition of "disparate databases" as "incompatible databases having different schemas" at claim construction thus were not "clearly irreconcilable" with Vasudevan's statements to the PTO. *See Kilopass Tech., Inc. v. Sidesense Corp.*, 2015 WL 1065883, at *2 (N.D. Cal. Mar. 11, 2015) (awarding fees where, despite the patent examiner's express finding at prosecution that plaintiff's application overcame prior art because "bitlines and wordlines have a distinct functional effect on the operation of memory devices and thus are not interchangeable," plaintiff took the contrary position that wordlines and bitlines may be used interchangeably during claim construction). The definitional disputes in *Kilopass* and *MarcTec*— heat or no heat, interchangeable or not—were simple and binary, and had already been answered before the PTO. The question here, how to define "disparate databases," is by its very nature complex and multifaceted. VSi was furthermore able to mount non-frivolous arguments that statements made at prosecution did not yield one single clear answer giving rise to a binding construction.

It is thus, in hindsight, not surprising that the answer the Court reached in its initial claim construction order based on the prosecution history—"databases having an absence of compatible keys or record identifier (ID) columns of similar value or format in the schemas or structures of the database that would otherwise enable linking data within the constituent databases"—gave rise to new uncertainties not at issue earlier in the litigation. Both parties acknowledged the grammatical ambiguity in the initial claim construction and the need for further clarification. VSi, moreover, did not re-assert its previously rejected proposed construction; it rather championed a disjunctive reading of the Court's issued definition. *See Intex Recreation Corp. v. Team*

*Worldwide Corp.*, 2015 WL 135532 (D.D.C. Jan 9, 2015) (finding that a failure to stipulate to non-infringement warranted fees where plaintiff's arguments were "exceptionally meritless," "made no sense," were identical to previously rejected contentions, and "directly contradicted the patent specification," among other flaws).  That VSi pursued a facially plausible, albeit feebly supported, construction in lieu of stipulating to non-infringement does not rise to conduct warranting a fee award.

Indeed, rather than casting them aside as lacking basis or clearly contradictory to undisputed evidence, the Federal Circuit grappled squarely with VSi's arguments in reaching its decision to affirm this Court's adoption of a conjunctive construction.  In addition, other courts in this district have suggested that merely taking an aggressive stance while positing stretched or unsuccessful infringement theories does not, without more, warrant fee-shifting.  *See TransPerfect Global, Inc. v. MotionPoint Corp.*, 2014 WL 6068384, at *8 (N.D. Cal. Nov. 13, 2014) (finding "frivolous arguments" and other missteps, only some of which were inadvertent, too minor to justify a fee award); *Kreative Power, LLC v. Monoprice, Inc.*, 2015 WL 1967289, at *5 (N.D. Cal. Apr. 30, 2015).  That VSi advanced positions based on a reading of the prosecution history ultimately found to be untenable does not render its case wholly frivolous, or necessarily imply it acted in bad faith, such that its conduct should be deemed "exceptional."  That the merits of this case ultimately favored MS cannot alone justify shifting its fees onto VSi.

B.  Manner of Litigation

"The purpose of section 285, unlike that of Rule 11, is not to control the local bar's litigation practices—which the district court is better positioned to observe—but is remedial and for the purpose of compensating the prevailing party for the costs it incurred in the prosecution or defense of a case where it would be grossly unjust, based on the baselessness of the suit or because of litigation or Patent Office misconduct, to require it to bear its own costs." *Highmark, Inc. v. Allcare Health Mgmt. Sys., Inc.*, 687 F.3d 1300, 1310, n.1 (Fed. Cir. 2012), *vacated and remanded*, 134 S. Ct. 1744 (2014); *see Octane*, 134 S. Ct. at 1757 ("sanctionable conduct is not the appropriate benchmark").

Although *Octane* ostensibly liberalized the standard for fee shifting, and clearly reduced the prevailing party's burden from clear and convincing to a preponderance of the evidence, post-*Octane* decisions awarding fees have generally cited egregious behavior. See*, e.g., Intellect Wireless, Inc. v. Sharp Corp.*, No. 10-6763, 2014 WL 2443871 (N.D. Ill. May 30, 2014) (awarding fees based on false declarations before the PTO, without which, the court concluded, the plaintiff would not have obtained the patents at issue); *Cognex Corp. v. Microscan Sys., Inc.*, No. 13-2027, 2014 WL 2989975 (S.D.N.Y. June 30, 2014) (criticizing plaintiff for post-trial motions that simply sought to re-litigate issues decided during trial and awarding fees at least as to those motions); *Precision Links Inc. v. USA Products Group, Inc.* No. 08-576, 2014 WL 2861759 (W.D.N.C. June 24, 2014) (criticizing plaintiff for seeking a preliminary injunction based in large part on a previously-rejected theory of liability and filing frivolous post-dismissal motions). In one pre-*Octane* decision, another court in this district denied sanctions but held in abeyance a likely award of damages based on findings of litigation misconduct, including findings that plaintiffs knew before filing suit they may not even own the patent, manufactured venue in Texas via a sham corporate façade, asserted an unreasonable number of patent claims, sandbagged defendant with newly-produced documents and infringement contentions, and "played fast and loose with the rules for being admitted to practice *pro hac vice* in this district." *Network Prot. Sciences, LLC v. Fortinet, Inc.*, No. 12-01106, 2013 WL 4479336 (N.D. Cal. Aug. 20, 2013).

At no point, or in aggregate, did VSi's conduct rise to such a level. MS's contentions to the contrary significantly distort VSi's behavior and take it out of context. MS's contention that VSi pursued its case despite conclusive testimony from its own expert contradicting its proposed claim construction represents a highly selective reading of the testimony. Indeed, alongside his statements favoring MS's position, Dr. Cardenas, VSi's expert, also testified that "if the database is by a different manufacturer, then we generally refer to it as being disparate." Connors Decl., Ex. 12 at 5:10-12.

VSi is most certainly not without fault for the long and arduous trajectory of this case. It engaged in numerous questionable and overly aggressive litigation tactics. On balance, however,

such behavior may reasonably be interpreted as part of VSi's good-faith effort to advance its position in the face of MS's vigorous and equally fervent defense.  MS engaged in maneuvers that likewise teetered on the border between zealous and antagonistic, and significantly prolonged the litigation.  Especially within this context, VSi's manner of litigation was not sufficiently egregious to justify fee-shifting.

## V. CONCLUSION

MS's motion for attorney fees is, accordingly, denied.[3]

**IT IS SO ORDERED**.

Dated: August 19, 2015

_____
RICHARD SEEBORG
United States District Judge

---

[3] In light of this holding, the question of whether MS offers adequate justification for the fee amount it requests need not be reached.  MS conceded at oral argument that its initial request for $3,680,023 million, its entire bill for this case, was, to put it mildly, something of an overreach.  Such requests, which fail to account for a party's own role in protracting litigation it purports is meritless, can undermine a party's credibility.  To grant such a request would, more importantly, set a poor precedent of permitting parties who significantly over-litigate to foist their exorbitant bill onto any opposing party who also engages in some antagonistic or unnecessary tactics, thereby rewarding behavior which taxes the judicial system and hampers efficient and equitable dispute resolution.